```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
SHMUEL DOV ZIONS,                                                 :
                                                                  :
                              Plaintiff,                          :   **MEMORANDUM DECISION**
                                                                  :   **AND ORDER**
                  - against -                                     :
                                                                  :   18-cv-7240 (BMC)
COMMISSIONER OF SOCIAL                                            :
SECUIRTY,                                                         :
                                                                  :
                              Defendant.                          :
----------------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not entitled to Social Security Disability benefits under the Social Security Act.

Plaintiff raises three bases for remand. First, plaintiff contends that the ALJ failed to sufficiently develop the record regarding plaintiff's personality disorder. Second, plaintiff contends that newly-submitted evidence warrants remand for further consideration. Third, plaintiff contends that the ALJ failed to justify the weight she afforded the medical opinion of plaintiff's treating psychiatrist. For the reasons discussed below, plaintiff's motion for judgment on the pleadings is denied and the Commissioner's cross-motion for judgment on the pleadings is granted.

I.

Plaintiff first claims that the ALJ failed to develop the record regarding his personality disorder because "the ALJ did not question [plaintiff] about his medical treatment or his therapy or seek out other records." He argues this was error because "the record contains a clear

diagnosis of borderline personality disorder" and that "development of the record would have yielded records" from Dr. Taylor and LCSW Bauman supporting that conclusion.

Although the claimant in a social security disability case bears the burden of proving his disability, the "ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). However, if "the record contained sufficient other evidence supporting the ALJ's determination and . . . the ALJ weighed all of that evidence when making his residual functional capacity finding, there was no 'gap' in the record." Johnson v. Colvin, 669 Fed. App'x 44, 46 (2d Cir. 2016). Despite plaintiff's contentions, the ALJ adequately developed the record.

The fact that the ALJ did not request Dr. Taylor's cognitive therapy records or evaluate whether her diagnosis of Borderline Personality Disorder (BPD) was a severe impairment is of no consequence. Under step two of the ALJ's analysis, the ALJ in fact did find that plaintiff had a severe mood disorder. Indeed, although plaintiff asserts that the "ALJ certainly had enough clues about a personality disorder to Reference Listing 12.08 in her decision," the ALJ expressly stated that "[i]n reaching this finding, the undersigned has taken into consideration all impairments set forth in Appendix 1, with particular attention paid to listings 12.04, 12.06, *and 12.08*" (emphasis added). Plaintiff fails to explain how a specific diagnosis of BPD would alter the ALJ's finding under Step Two or impact plaintiff's RFC, which is already greatly restricted.

Furthermore, "courts do not necessarily require ALJs to develop the record by obtaining additional evidence themselves, but often permit them to seek it through the claimant or his counsel." Rivera v. Comm'r of Social Sec., 728 F. Supp. 2d 297, 330 (S.D.N.Y. 2010) (citing cases). When the ALJ asked plaintiff's attorney about the records he was seeking to submit,

plaintiff's attorney stated that only Dr. Hirsch's records were outstanding, making no mention of Dr. Taylor's records:

> ALJ: So first we're going to get over a couple of procedural issues out there. I received your letter dated December 27, 2017, and in it you asked me to keep the records open for 30 days from the date of the hearing because you had additional records that you'd like to submit.
>
> …
>
> ALJ: So you did not have the 30-day – so can you tell me – just give me a little proffer of what records you're looking for. Dr. Hirsch's record?
>
> ATTY: Those are the only records that are outstanding.

Once again, when prompted on any outstanding records, plaintiff's attorney did not make mention of Dr. Taylor's records:

> ALJ: And you think you'll be able to get me the medical records as well?
>
> ATTY: In two weeks hopefully, yes, from Dr. Hirsch. Those are the only records.
>
> ALJ: That's the only outstanding one. I have it up to October 13, 2016.
>
> ATTY: Exactly.

Thus, even assuming the record was incomplete in any way, the ALJ fulfilled whatever obligation she had to develop it by asking counsel to produce any additional materials that could support plaintiff's claim.

## II.

Plaintiff next claims that newly submitted evidence warrants remand for further consideration. Specifically, plaintiff asserts that (1) late-submitted records from Dr. Victoria Taylor for treatment of personality disorder; (2) supplemental records from social worker Bauman from June 2015 and after December 2017; (3) a supplemental medical opinion from social worker Bauman; (4) Center for Intensive Treatment of Personality Disorder ("CITPD")

3

treatment records; and (5) a new medical opinion from CITPD therapist Susan Kushner are new and material, and therefore warrant a remand of these proceedings.

A district court has the authority to "remand the case to the Commissioner of Social Security. . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence." 42 U.S.C. § 405(g). Therefore, first, the plaintiff must show that this evidence is in fact "'new' and not merely cumulative of what is already on the record." Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988) (quoting Szubak v. Sec. of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984)). Second, this new evidence must be "material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Id. (citing Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir. 1975)). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." Id. (citing Szubak, 745 F.2d at 833; Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981)). Lastly, plaintiff must demonstrate "good cause for her failure to present the evidence earlier." Id. (citing Tolany v. Heckler, 756 F.2d 268, 272 (2d Cir. 1985)). Evidence that did not come into existence until after the administrative hearing satisfies the good cause requirement. Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004). If the ALJ fails to adequately develop the record, this may also be sufficient good cause. Vargas v. Berryhill, No. 16-cv-3385, 2019 WL 1283999, at 6* (S.D.N.Y. Mar. 20, 2019).

Upon review, I disagree with plaintiff that any of the items he identifies warrant remand. First of all, some of Dr. Taylor's records are not new because they were created prior to plaintiff's September 2015 application date and plaintiff gives no good cause for introducing them now. More importantly, none of Dr. Taylor's records have a "reasonable possibility" of

4

influencing the Commissioner "to decide the ultimate question of plaintiff's disability differently." See Tirado, 842 F.2d at 597. Plaintiff argues that these records should come in because "there is a reasonable possibility that they will change the findings at Step Two to include [a] personality disorder as a medically determinable impairment and, in turn, change the assessment at Step Three to include a full assessment of Listing 12.08." But the ALJ already determined that plaintiff suffers from a severe impairment in the form of a mood disorder under Listing 12.8, and, based on this, found that plaintiff's RFC was highly restrictive. Merely lending a specific label to this mood disorder is not reasonably likely to alter the outcome of the ALJ's finding.

LCSW Bauman's supplemental records and opinion are likewise insufficient for remand. Plaintiff argues that good cause exists for untimely submitting the supplemental records because "the ALJ failed to develop the record about Mr. Zions' personality disorder." However, as explained above, the ALJ did not fail to develop the record under this Circuit's prevailing standards. And Bauman's "new, expanded assessment" of the therapy sessions with plaintiff is "cumulative of what is already on the record." Tirado, 842 F.2d at 597. This three-page assessment checks off boxes describing plaintiff's personality as distrustful of others, excessively emotional, feeling inadequate, preoccupied with orderliness, rigid, hypersensitive, and anxious. Bauman goes on to explain that plaintiff exhibits rage when he's ignored and says that his emotional problems "limit him from being able to work, hold down and succeed at a job."

Yet the ALJ noted in her decision that she "accepts that the claimant suffers from severe mental impairments which have a considerable impact on his ability to function." Indeed, the ALJ discussed almost all of the above-listed, supposedly "new" symptoms in her decision:

> Treating source records document a history of depression since adolescence . . . [including] major depressive disorder and attention deficit hyperactivity disorder

5

>>(ADHD). Current symptoms include appearing disheveled, social isolation, memory problems, irritability, depression, periodic suicidal ideation, excessive concern about weight and body image, periodic auditory hallucinations, fearfulness, tearfulness, and self-injurious behaviors. Records also contain reference to instances where the claimant's anger has manifested with physical altercations with family members.

The ALJ also noted:

> Mental status examinations since his filing date include: irritable/anxious/ dysphoric mood; constricted affect; rambling/tangential speech; circumstantial thought processes; limited and concrete thought processes; and disheveled/ unkempt appearance.

Bauman's supplemental treating opinion is thus cumulative of evidence already considered – and, indeed, accepted as true – by the ALJ in forming her decision.

The supplemental CITPD records, created after the ALJ issued her decision, are also not "new" because they are cumulative and would not have a reasonable possibility of influencing the Commissioner to reverse the ALJ's finding of not disabled. See id. Nor is it even clear that most of these records are even "relevant to the claimant's condition during the time period for which benefits were denied." Id. As described by plaintiff, these records detail the "personality disorder diagnoses and traits" that "appear[] in earlier records, but [the] information is certainly new and expanded." Plaintiff says that, based on these records, an adjudicator could assess plaintiff's personality disorder differently at Step Two, which would alter the Step Three RFC analysis. I disagree.

Plaintiff does not give any reason *why* these new records would possibly convince the Commissioner otherwise, but it is clear that they largely, if not exclusively, rehash old symptoms and diagnoses already considered by the ALJ in her decision. In these records, Dr. Zimmerman describes plaintiff as exhibiting "persistent anxiety creating ruminative thoughts and fears of failure, leading to significant avoidance of any potential stress, leading to isolation and feeling

6

stagnant." Again, the ALJ accepted that plaintiff suffered from each of these symptoms and so, assuming Dr. Zimmerman's diagnoses could even fairly be said to apply to plaintiff during the relevant time period, the "new" records are still cumulative of the old records that the ALJ already considered.

Finally, LCSW Kushner's opinion does not relate back to the relevant period, and therefore is not material. Kushner's treatment of plaintiff began nine months after the ALJ issued her decision and Kushner's May 2019 opinion was created more than a year after the decision. A review of that 2-page questionnaire that Kushner completed establishes that Kushner made no reference to any time prior to her treatment of plaintiff, with most assertions in that document beginning with "Patient tends to" or "Patient describes/feels" or "Patient reports." And even if I applied the opinion to the relevant time period, the questionnaire is cumulative of evidence the ALJ had already considered and would therefore be unlikely to alter the outcome of the decision. Moreover, because Kushner is a social worker, her opinion is even less likely to have a material effect on the Commissioner if the case were remanded. See Williams v. Berryhill, No. 17-cv-6470, 2018 WL 6727350, at *2 (E.D.N.Y. Dec. 21, 2018) ("An ALJ is not compelled to assign significant or controlling weight to the opinions of social workers . . . and is free to conclude that the opinion of a licensed social worker is not entitled to any weight.") (*colatus*[1]).

### III.

Plaintiff's final contention is that the ALJ failed to justify the weight she afforded the opinion of plaintiff's treating psychiatrist. "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-

---

[1] I.e., edited citation.

7

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not afford a treating physician's opinion controlling weight, she must still "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

Among the factors that the ALJ must consider when deciding whether to give a treating physician's opinion a certain weight are "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess, 537 F.3d at 129 (*colatus*). If, however, "a searching review of the record" assures the reviewing court "that the substance of the treating physician rule was not traversed," the court should affirm the ALJ's decision despite her "failure to 'explicitly' apply the Burgess factors." See Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019) (quoting Halloran, 362 F.3d at 33).

Dr. Hirsch, plaintiff's treating psychiatrist, provided a one-page letter on plaintiff's behalf, expressing that plaintiff had "marked difficulties" despite his treatment and concluding that these difficulties inhibited plaintiff from adapting and managing himself or interacting with others. Dr. Hirsch ultimately concluded that plaintiff "was unable to work or sustain any kind of schooling." Nevertheless, the ALJ gave this opinion "little weight." Plaintiff criticizes this decision, saying "[f]irst, an ALJ may not reject a treating source opinion as inconsistent with

8

underlying records without requesting clarification from the treating source[2] . . . [s]econd, the ALJ erred by failing to consider the regulatory factors . . . [and t]hird, the ALJ's reason is factually flawed."

Despite plaintiff's contentions, the ALJ gave sufficient reasons for affording Dr. Hirsch's opinion little weight:

> The undersigned has also taken into consideration a report from Dr. Hirsch, dated January 6, 2016, stating that the claimant was unable to work or maintain any type of schooling. While the undersigned acknowledges the deference accorded a treating source, a finding of disability or inability to work is an issue reserved to the Commissioner. This opinion is also inconsistent with Dr. Hirsch'[s] own treatment notes and the testimony at the hearing regarding the claimant's functioning. This opinion is therefore accorded little weight.

Thus, in rejecting Dr. Hirsch's ultimate conclusion, the ALJ correctly noted that much of the medical opinion – that portion declaring that plaintiff "was unable to work or sustain any kind of schooling" – was improper. According to 20 C.F.R. § 404.1527(a), "medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairments(s), including your *symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions*" (emphasis added). However, § 414.1527(d)(1) makes clear that it is the Social Security Administration, not the treating physician, who may opine on whether a claimant "meet[s] the statutory definition of disability." Indeed, a "statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Social Security Administration] will determine that [a claimant] is disabled." 20 C.F.R. § 404.1527(d)(1).

---

[2] Plaintiff cites Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998), for this proposition, but there is nothing in that case even resembling such a rule. Perhaps plaintiff was referring to footnote 9 of that decision, which states that if treatment notes are *unclear*, it is "the Commissioner's responsibility to clarify the record." But this is not such a situation.

9

In any event, other evidence in the record belies Dr. Hirsch's dire conclusion and supports the ALJ's decision. Treatment records from Dr. Hirsch between December 2016 and December 2017 indicate that plaintiff reported daily socializing and exercising; that he had no psychosis or suicidal ideation; that he hadn't experienced any hallucinations and had full range of affect; and that plaintiff's "[o]verall functioning is described by informants as much improved." On December 16, 2016, Dr. Hirsch stated that "[w]hile symptoms have not improved significantly he is doing more and getting out of the home." And on May 4, 2017, Dr. Hirsch stated that plaintiff was "[i]mproving slowly, more active but continues to be very isolative."

Moreover, the consultative psychiatric examiner found only "moderate difficulties dealing with stress, but essentially no other limitations." The ALJ gave great weight to this opinion:

> The examiner performed an in-person examination of the claimant, has program knowledge, and the opinion is consistent with claimant's testimony regarding his symptoms as well as his self-reported activities of daily living. The opinion is also consistent with mental status examination at the time, which was unremarkable except for dysthymic mood and mildly impaired memory skills.

In addition, the ALJ relied on plaintiff's own hearing testimony to conclude that he was not disabled under the relevant regulations. For example, plaintiff (at the time, 29 years old) testified that he was a seminary school student for six years after high school, which required attending classes for five hours per day, six days per week. Plaintiff also testified that he had attended Bramson ORT College for two semesters, where he studied computer programming. Further, plaintiff testified that he volunteers three times per week at a physical therapy office, and that to relieve stress, he works on his novel.

The ALJ did not gloss over Dr. Hirsch's opinion, and in fact acknowledged that plaintiff "suffers from severe mental impairments which have considerable impact on his ability to function and would preclude highly stressful work activity." However, the ALJ took into consideration that plaintiff volunteers, attended school, socializes, exercises, is well versed in both computers and social media, and has demonstrated the ability to advocate for himself.

All that is necessary to uphold the ALJ's conclusion is that it be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389, 401 (1971) (*colatus*). Based on the above, that standard is met here.

## CONCLUSION

Plaintiff's [15] motion for judgment on the pleadings is denied and the Commissioner's [25] cross-motion for judgment on the pleadings is granted. The Clerk is directed to enter judgment, dismissing the case.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
April 6, 2020